## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

STEPHEN DIFLORIO,                    :
                                     :
        Plaintiff,                   :
                                     :        C.A. No. 1:15-cv-00186-GMS
    v.                               :
                                     :
CITY OF DOVER, et al.                :
                                     :
        Defendants.                  :

### DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Dated:  July 14, 2017                **WHITEFORD TAYLOR & PRESTON LLP**

                                     */s/ Daniel A. Griffith*
                                     Daniel A. Griffith, Esquire (# 4209)
                                     Kaan Ekiner, Esquire (# 5607)
                                     The Renaissance Centre
                                     405 N. King Street, Suite 500
                                     Wilmington, DE 19801
                                     Telephone:  (302) 357-3262
                                     Facsimile:  (302) 357-3275
                                     dgriffith@wtplaw.com
                                     *Attorneys for Defendants*

## TABLE OF CONTENTS

**Contents**                                                                                      **Page**

INTRODUCTION ............................................................................................................ 1

NATURE AND STAGE OF PROCEEDINGS ............................................................... 3

STATEMENT OF FACTS ............................................................................................. 3

    A.    March 16, 2013 ............................................................................................ 3

    B.    March 17, 2013 ............................................................................................ 6

    C.    City of Dover's Use of Force and Taser Policy .......................................... 7

LEGAL ARGUMENT .................................................................................................... 7

  I.    Applicable Legal Standards ................................................................................ 7

    A.    Summary Judgment .................................................................................... 7

    B.    42 U.S.C. §1983 Claims ............................................................................ 8

    C.    Qualified Immunity .................................................................................... 9

  II.    THE UNITED STATES SUPREME COURT AND THE THIRD CIRCUIT COURT OF APPEALS HAVE MADE CLEAR THAT THE POLICE OFFICER DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY FOR THE MARCH 16, 2013 TASER INCIDENT .................................................................................................................. 9

    A.    Over The Last Several Years, The United States Supreme Court Has Been Reversing Decisions By Circuit Courts That Do Not Grant Qualified Immunity In Cases Involving The Use of Force ............................................................................ 9

    B.    The United States Supreme Court's Recent Reversals Include Decisions Arising Out of the Third Circuit ............................................................................................ 10

    C.    *Salazar-Limon* Confirms Qualified Immunity Where A Police Officer Reasonably Believes that the Suspect Presents a Danger, Even When that Belief is Mistaken .... 11

    D.    With Respect To The March 16, 2013 Tasing Incident, The Police Officer Defendants are Entitled to Qualified Immunity Under *Salazar-Limon* ...................... 12

  III.    THE POLICE OFFICER DEFENDANTS INVOLVED IN MR.DIFLORIO'S APPREHENSION ON MARCH 17, 2013 ARE ENTITLED TO QUALIFIED IMMUNITY AND SUMMARY JUDGMENT IS APPROPRIATE BECAUSE EVEN ASSUMING THE FACTS IN A LIGHT MOST FAVORABLE TO MR. DIFLORIO, HE CANNOT IDENTIFY ANY OFFICERS WHO STRUCK HIM ..................................... 14

  IV.    THE POLICE OFFICER DEFENDANTS ARE IMMUNE FROM ALL STATE LAW CLAIMS PURSUANT TO THE COUNTY AND MUNICIPAL TORT CLAIMS ACT, 10 *DEL. C.* §4010, ET SEQ. ............................................................................................ 15

  V.    MR. DIFLORIO'S CLAIMS AGAINST THE CITY OF DOVER ARE MERITLESS AS HE HAS FAILED TO ADDUCE ANY EVIDENCE TO ESTABLISH THE EXISTENCE OF AN UNCONSTITUTIONAL POLICY OR CUSTOM ............................................. 16

    A.    Legal Standard for Mr. DiFlorio's *Monell* Claim ...................................... 16

i

B.      Mr. DiFlorio has Failed to Identify an Unconstitutional Policy or Custom Maintained by the City of Dover ................................................................................................ 17

C.      Mr. DiFlorio has Failed to Establish that the City of Dover acted Deliberately and was the "Moving Force" Behind Plaintiff's Alleged Injuries or that a Direct Causal Link Exists Between Plaintiff's Alleged Injuries and the City of Dover's Policies or Customs to Any Degree............................................................................................. 19

CONCLUSION............................................................................................................................. 20

## TABLE OF AUTHORITIES

**Cases**                                                                                                                    **Page**

*Anderson v. Creighton,*
483 U.S. 635 (1987)..................................................................................... 13

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986).................................................................................... 11

*Ashcroft v. al–Kidd,*
563 U.S. 731 (2011).................................................................................... 13

*Beck v. City of Pittsburgh,*
89 F.3d 966 (3d. Cir. 1996)........................................................................ 22

*Board of County Comm'rs v. Brown,*
520 U.S. 397 (1997).................................................................................... 22

*Bonenberger v. Plymouth Twp.,*
132 F.3d 20 (3d Cir. 1997).......................................................................... 26

*Brown v. Muhlenberg Tp.,*
269 F.3d 205 (3d Cir. 2001)................................................................. 22, 26

*Carr v. Town of Dewey Beach,*
730 F.Supp. 591 (D. Del. 1997)................................................................. 21

*Carr v. Town of Dewey Beach,*
730 F.Supp. 591 (D. Del. 1990)................................................................... 8

*Carroll v. Carman,*
135 S.Ct. 348 (2014)................................................................................... 14

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986).................................................................................... 11

*City of Canton v. Harris,*
489 U.S. 378 (1989).................................................................................... 26

*City of Oklahoma v. Tuttle,*
471 U.S. 808 (1985).................................................................................... 22

*Donahue v. Gavin,*
280 F.3d 371 (3d Cir.2002)........................................................................ 12

*Estate of Smith v. Marasco,*
318 F.3d 497 (3d Cir. 2003)..................................................................................... 11

*Farris v. Moeckel,*
664 F.Supp. 881 (D. Del. 1997)................................................................................ 16

*Graham v. Connor,*
490 U.S. 386 (1989)............................................................................................... 8, 13

*Grazier ex rel. White v. City of Philadelphia,*
328 F.3d 120 (3d Cir. 2003);................................................................................... 19

*Kelly v. Borough of Carlisle,*
544 Fed.Appx. 129 (3d Cir. 2013)........................................................................ 9, 13

*Kneipp v. Tedder,*
95 F.3d 1199 (3d Cir. 1996).......................................................................................... 8

*Lamont v. New Jersey,*
*637 F.3d 177 (3d Cir. 2011)* ....................................................................................... 8

*Lateef Dickerson v. Cpl. Thomas W. Webster, et al.,*
14-1244-RGA (D. Del.)...................................................................................... 17, 18

*Malley v. Briggs,*
475 U.S. 335 (1986)................................................................................................... 9

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
475 U.S. 574 (3d Cir. 1989)......................................................................................... 8

*Monell v. N.Y. City Dept. of Social Servs.,*
436 U.S. 658 (1978)....................................................................................... 16, 17, 20

*Mullenix v. Luna,*
136 S.Ct. 305 (2015)................................................................................................ 10

*Ontiveros v. City of Rosenberg,*
564 F.3d 379 (5th Cir. 2009) ................................................................................... 13

*Russell v. Lowman, et al.,*
SLR 15-860, slip op. (D. Del. Feb. 10, 2017).................................................... 13, 15

*Salazar-Limon v. City of Houston, et al.,*
826 F.3d 272 (2016)................................................................................................ 11

*Salazar-Limon v. City of Houston, et al.*,
97 F.Supp.3d 898 (S.D.Tex. 2015) .................................................................. 11, 13

*Salazar-Limon v. City of Houston, Tex.*,
137 S.Ct. 1277 (2017) ........................................................................... 9, 11, 12

*Stanton v. Sims*,
134 S.Ct. 3 (2013) ...................................................................................... 10

*Taylor v. Barkes*,
135 S.Ct. 2042 (2015) ................................................................................ 10

*White v. Pauly*,
137 S.Ct. 548 (2017) .................................................................................... 9

**Statutes**

10 *Del. C.* §4011(a) .................................................................................... 15
10 *Del. C.* §4010 ...................................................................................... 15

**Rules**

Fed. R. Civ. P. 56(a) .................................................................................. 11

**Other Authorities**

42 U.S.C. §1983 .................................................................................. 3, 8, 12

# INTRODUCTION

Saint Patrick's Day weekend is one of the busiest and most dangerous weekends of the year for law enforcement officers. March 16, 2013 was a Saturday and the day before St. Patrick's Day. Mr. DiFlorio was 20 years old on that date and therefore unable to drink alcohol legally. Regardless, Mr. DiFlorio went to Smithers Pub and Restaurant ("Smithers") in Dover, Delaware, to celebrate the holiday with a friend. Mr. DiFlorio admitted to drinking while at Smithers, testifying that he consumed between two (2) and five (5) beers during a 1 to 2 hour time frame. Mr. DiFlorio left the establishment, and for reasons that are not clear, was involved in a fight with another individual who was Mr. Diflorio's teammate on the Wesley College football team. Although Mr. DiFlorio was unable to recount precisely how long the fight lasted, when City of Dover Police Officers arrived on the scene, Mr. DiFlorio, a large male by all accounts, was sitting on the ground, bloodied, with a contusion on his forehead.

Upon their arrival, the responding officers observed Mr. DiFlorio to be belligerent and aggressive. As the officers approached him, he began to walk away and disregarded their commands to stop.[1] As Mr. Diflorio continued to disregard the officers' verbal commands and continued walking away from them, one of the officers, Master Corporal Jeffrey Melvin, caught up to him and stopped his flight by placing Mr. DiFlorio in a "hug" position. Mr. DiFlorio reacted by quickly raising his arm, in what Patrolman Brian Berns reasonably believed to be an attempt to strike MCpl Melvin. In a split-second decision, in order to protect MCpl Melvin from Mr. Diflorio's raised arm, Officer Berns tased Mr. DiFlorio in an attempt to temporarily immobilize him and neutralize the threatening situation.

---

[1] At this time, Mr. Diflorio had committed a disorderly person offense by virtue of his involvement in the fight, a charge to which he later pled guilty.

1

Despite the police officers taking Mr. DiFlorio to the hospital and Mr. Diflorio's agreement that he would turn himself into the authorities the subsequent day by 7:00 p.m. so that the officers could return to patrol on St. Patrick's Day weekend, Mr. DiFlorio, who had given the officers a false home address, failed to do so. After obtaining an arrest warrant, the officers went to Mr. DiFlorio's residence, discovered by the officers as he had provided the hospital staff with the correct address, in an attempt to take him into custody. After several rounds of "knocking and announcing," Mr. DiFlorio finally opened the door, but refused to exit his residence. Armed with the arrest warrant, the police officers grabbed Mr. DiFlorio, but with their momentum, fell off of the porch onto the grass and arrested him without further incident.

Upon these facts, Mr. DiFlorio initiated this lawsuit against the police officers involved as well as the City of Dover Police Department (the "City of Dover"). Despite his belligerent, aggressive, intolerant, and petulant behavior, it is Mr. DiFlorio who now claims that the officers acted with excessive force in apprehending him following the fight, and in arresting him the following day. Moreover, he claims that the City of Dover maintains an unconstitutional policy or custom that exhibits deliberate indifference and caused the officers' constitutional violations.

Discovery has closed and no evidence has been adduced to establish the constitutional violations alleged. The record of evidence is clear: the police officers involved in Mr. DiFlorio's arrest acted objectively reasonably at every stage, even when confronted with difficult split-second decisions. Perhaps more importantly, the United States Supreme Court and the Third Circuit Court of Appeals have made clear that the officers involved are entitled to qualified immunity from liability under the circumstances. With respect to Mr. DiFlorio's claims against the City of Dover, those claims lack any evidentiary basis whatsoever inasmuch as there has been no evidence adduced of an unconstitutional custom or policy.

2

## NATURE AND STAGE OF PROCEEDINGS

Mr. DiFlorio initiated this action via Complaint filed on February 26, 2015 against

Corporal Barrett, Officer Berns, John Doe I, John Doe II, John Doe III, John Doe IV, John Doe

V, Corporal Hoffman, MCpl Melvin, Officer Wood (collectively referred to as "Police Officer

Defendants"), and the City of Dover (collectively, along with the Police Officer Defendants,

referred to as "Defendants").  [D.I. 1].

Defendants filed a Motion to Dismiss in Lieu of an Answer on June 12, 2015.  [D.I. 17].

In response, a First Amended Complaint was filed by Mr. DiFlorio, alleging the following causes

of action:

- Count I – Violation of 42 U.S.C. §1983 against the Police Officer Defendants;
- Count II – Supplemental Claims against the Police Officer Defendants;
- Count III – Bystander Liability - 42 U.S.C. §1983 Against the Police Officer Defendants; and
- Count IV – 42 U.S.C. §1983 against City of Dover.

[D.I. 21].  Defendants filed their Answer on November 2, 2015.  [D.I. 22].

The Amended Trial Scheduling Order governing this matter set forth a fact discovery

deadline of April 21, 2017 and a dispositive motion deadline of July 14, 2017.  [D.I. 66].

On May 15, 2017, Mr. DiFlorio produced the expert report of R. Paul McCauley, Ph.D.,

FACFE (the "McCauley Report").

This is Defendants' Opening Brief in Support of their Motion for Summary Judgment.

## STATEMENT OF FACTS

### A.   March 16, 2013

On March 16, 2013, Mr. DiFlorio arrived at Smithers Bar at around 7:00 p.m. or 8:00

p.m.  A-002 at 33:1-6.  Upon arrival, he sat down to eat and drink beer with his friend, Angel

Clayborn.  A-002 at 33:15-20.  Mr. DiFlorio was inside Smithers for approximately an hour or

two (2). A-003 at 34:1-3. During his time in Smithers, Mr. DiFlorio consumed between two (2) and five (5) beers.[2] A-003 at 34:7-8. At approximately 10:30 p.m., Mr. DiFlorio and Mr. Clayborn exited the bar, at which point they engaged a group of individuals in a fight. A-004 at 35:3-17. City of Dover Police Officers were called to respond to the fight and, upon their arrival, most of those involved fled. A-010 at 90:1-9; A-031 at 31:4-10.

That evening, Officer Brian Berns was working as a patrolman. A-009 at 83:1-7. Officer Berns was called over the intercom to report to Smithers. A-010 at 90:4-5. Officer Berns arrived at the scene first, followed immediately by his supervising officer, MCpl Melvin. A-010 at 90:5-6; A-031 at 31:4-10. Upon arrival at Smithers, Officer Berns was directed to the alley next to the establishment where he saw Mr. DiFlorio, a "large white male." A-010 at 90:1-9. Mr. DiFlorio did not have his shirt on and was bleeding from his face and body. A-010 at 90:10-11. Officer Berns walked towards Mr. DiFlorio and the men made eye contact. A-010 at 90:13-14; A-031 at 31:4-10. Officer Berns instructed Mr. DiFlorio to come to him, but Mr. DiFlorio ignored the instruction and started walking away. A-010 at 90:14-15. Officer Berns repeated the instruction and Mr. DiFlorio looked at him, turned away, and continued to walk away. A-010 at 90:16-18. MCpl Melvin, who was initially behind both Officer Berns and Mr. DiFlorio, walked past Officer Berns and grabbed Mr. DiFlorio to stop him from walking. A-010 at 90:18-21. MCpl Melvin grabbed him around the waist and attempted to pick him up, but Mr. DiFlorio's arms were above MCpl Melvin's grip (and not entrapped in the hold). A-031 at 33:9-15; A-013 at 120:6-8. MCpl Melvin then asked Mr. DiFlorio if he heard what Officer Berns said. A-031 at 33:15-17. Officer Berns stated that he was unsure if MCpl Melvin was able to obtain an initial

---

[2] Mr. DiFlorio testified that he was not drunk when he left Smithers. A-003 at 34:23-24.

4

clasp of his hands around Mr. DiFlorio. A-014 at 121:4-7. Officer Berns was approximately five (5) feet away from Mr. DiFlorio and MCpl Melvin at this point. A-015 at 122:11-15.

Upon MCpl Melvin apprehending Mr. DiFlorio, it appeared to Officer Berns that Mr. DiFlorio was spinning to punch Melvin. A-010 at 90:21-23. Mr. DiFlorio's hand was moving toward MCpl Melvin's face. A-016-017 at 130:24-131:7. At that point, Officer Berns pulled his Taser and tased Mr. DiFlorio to ensure no injury was sustained by MCpl Melvin. A-010-11 at 90:24-91:24. MCpl Melvin testified that he felt that Mr. DiFlorio could have posed a threat to him given that he was a large male who was just involved in a fight, evidencing aggressive behavior. A-032 at 35:19-36:9. Subsequent to the altercation, Officer Berns explained to MCpl Melvin that from his vantage point, he thought that Mr. DiFlorio was going to hit him, so he tased DiFlorio in an effort to protect his colleague. A-033 at 62:8-19.

Corporal Hoffman also arrived at the scene to witness Mr. DiFlorio's arrest. Corporal Hoffman's impression of the incident was that Mr. DiFlorio's arms were raised "pretty quickly" and he observed DiFlorio turning to the right, assuming that he (Mr. DiFlorio) was coming across with his right arm in an attempt to strike MCpl Melvin. A-038 at 19:18-20:7; 20:11-14.

Subsequently, Mr. DiFlorio was taken to Kent General Hospital for his injuries, including a contusion that he suffered on his head from the initial melee that he was involved in. A-010 at 90:11-12; A-012 at 104:11-17; A-019 at 138:8-19; A-020-21 at 143:20-144:16. During transport, Mr. DiFlorio admitted to Officer Berns that he had consumed alcoholic beverages and was under the age of 21. A-018 at 137:3-10. Mr. DiFlorio stated that he would turn himself in to the Dover Police Department when he was released from the hospital. A-020-21 at 143:11-144:16; A-094. Officer Berns obtained an arrest warrant for Mr. DiFlorio for disorderly conduct, resisting arrest, and underage consumption of alcohol. A-020 at 143:11-17; A-094.

5

### B.      March 17, 2013

Mr. DiFlorio was provided until 7:00 p.m. on March 17, 2013 to turn himself in. He failed to do so. A-023 at 145:18-23. At approximately 10:14 p.m., Officer Berns and MCpl Melvin went to Mr. DiFlorio's residence to arrest him. A-097. Upon arrival, Officer Berns knocked on the door announcing MCpl Melvin and himself. A-025 at 150:3-9. MCpl Melvin smelled marijuana around the front of the house. A-033 at 65:2-6. Mr. DiFlorio opened the curtain to the window, saw the officers, and shut it and did not open the door. A-024 at 147:3-8. Officer Berns knocked again numerous times and nobody opened the door. A-025 at 150:9-13. Given the circumstances, MCpl Melvin radioed for additional officers. A-025 at 150:13-14. Four (4) additional officers arrived in approximately 30 seconds. A-025 at 150:17-23. MCpl Melvin twice announced that he would kick the door down because the officers had an arrest warrant. A-026 at 151:3-5; A-033 at 65:7-12.

Upon hearing that the door would be kicked down, Mr. DiFlorio opened the door and asked the officers what they want. A-026 at 151:7-10. MCpl Melvin asked if he was Stephen DiFlorio, to which Mr. DiFlorio answered affirmatively. A-026 at 151:10-11. MCpl Melvin informed him that he was under arrest. A-026 at 151:11-12. Mr. DiFlorio did not exit the residence and instead pulled back, at which point MCpl Melvin grabbed him by his shoulder in an attempt to remove him from the property. Mr. DiFlorio then grabbed the door frame. Officer Berns next grabbed Mr. DiFlorio's other shoulder and pulled him, the momentum causing the three (3) men to fall onto the ground, on the grass. A-026 at 151:12-17; A-034 at 66:1-4. MCpl Melvin and Officer Berns took Mr. DiFlorio into custody upon landing on the ground. A-027 at 155:6-11. Mr. DiFlorio's hands were underneath his body. A-028 at 156:18-19; A-034 at 66:10-17; A-036 at 30:15-20. Mr. DiFlorio was not punched or kicked during the arrest. A-029 at

6

157:3-4.  Although Mr. Diflorio contends that he was punched and/or kicked while being

apprehended, he could not identify anyone who punched or kicked him.

Mr. Diflorio pled guilty to disorderly conduct, thereby vitiating any claims concerning

the lawfulness of his arrest and limiting this case to an excessive force claim.

### C.      City of Dover's Use of Force and Taser Policy.

Use of the Taser by the Police Officer Defendants is governed by General Order 1.3,

titled "Use of Force and Firearms Policy" (the "Use of Force Policy").  Specifically, section

III(F) governs use of Tasers.  Subsection III(F)(3) permits use of the Taser to protect officers

from bodily harm when: making an arrest or apprehension; attempts to control the subject by

other conventional tactics have been ineffective; or when there is a reasonable expectation that it

is unsafe for officers to approach within contact range of the subject.  A-043.  Moreover,

subsection III(F)(10) mandates reasonable discharge of the Taser given the level of force being

confronted.  A-044.  Finally, subsection III(F)(16) provides that the Taser is designed for

temporary immobilization of a subject and that it should not cause any significant injury.  A-045.

Officer Berns received and completed Use of Force training and Taser training.  A-007 at 29:4-

23; A-008 at 76:1-9.

## LEGAL ARGUMENT

### I.      Applicable Legal Standards

### A.      Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Fed. R.*

*Civ. P. 56(a).*  The moving party has the initial burden of proving the absence of a genuinely

disputed material fact relative to the claims in question. *See Celotex Corp. v. Catrett*, 477 U.S.

317 (1986). Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

When the moving party has carried its burden, the burden of proof shifts to the non-moving party to show some material facts that remain in doubt. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (3d Cir. 1989). "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment" as there must be evidence on which the jury could reasonably find" for the non-moving party. *Anderson*, 477 U.S. at 248; 252.

**B.     42 U.S.C. §1983 Claims**

Section 1983 permits an individual to bring suit against a "person, who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia" or deprives that individual "of any rights, privileges, or immunities secured by the Constitution and laws." *Carr v. Town of Dewey Beach,* 730 F.Supp. 591, 605 (D. Del.1990). Notwithstanding its broad language, Section 1983 does not create substantive rights; rather it merely provides a remedy for deprivations of rights established elsewhere in the Constitution or federal laws. *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). Thus, the initial question in a Section 1983 action is "'whether the plaintiff has alleged a deprivation of a constitutional right at all.'" *Donahue v. Gavin*, 280 F.3d 371, 378 (3d Cir.2002).

Excessive force claims "are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard," as articulated by the United States Supreme Court in *Graham v. Connor*, 490 U.S. 386, 388 (1989). The *Graham* Court defined "'reasonableness' of a particular

8

force" as "judged from the prospective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight … as "[t]he calculus of reasonableness must embody the allowance for the fact that police officers are often forced to make split-second judgments." *Id.* at 396-97.

### C.    Qualified Immunity

A government official sued under Section 1983 is entitled to qualified immunity unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct. *Ashcroft v. al–Kidd*, 563 U.S. 731, 735 (2011). A right is clearly established only if its contours are sufficiently clear that "a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). This doctrine "gives government officials breathing room to make reasonable but mistaken judgments," and "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* at 743 (*quoting Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Qualified immunity may be granted when there is a breakdown in the legal fiction that reasonably competent police officers know every clearly established law. *Kelly v. Borough of Carlisle*, 544 Fed.Appx. 129, 136-37 (3d Cir. 2013).

### II.    THE UNITED STATES SUPREME COURT AND THE THIRD CIRCUIT COURT OF APPEALS HAVE MADE CLEAR THAT THE POLICE OFFICER DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY FOR THE MARCH 16, 2013 TASER INCIDENT

### A.    Over The Last Several Years, The United States Supreme Court Has Been Reversing Decisions By Circuit Courts That Do Not Grant Qualified Immunity In Cases Involving The Use of Force

Just three (3) months ago, the United States Supreme Court observed that it has "not hesitated to summarily reverse courts for wrongfully denying officers the protection of qualified immunity in cases involving the use of force. *Salazar-Limon v. City of Houston, Tex.*, 137 S.Ct. 1277, 1282 (2017) (Sotomayor, J. dissenting). *See, e.g., White v. Pauly*, 137 S.Ct. 548 (2017)

*(per curiam)*; *Mullenix v. Luna*, 136 S.Ct. 305 (2015) *(per curiam)*; *Taylor v. Barkes*, 135 S.Ct. 2042 (2015) *(per curiam)*; *Carroll v. Carman*, 135 S.Ct. 348 (2014) (per curiam); *Stanton v. Sims*, 134 S.Ct. 3 (2013) *(per curiam)*.

**B.    The United States Supreme Court's Recent Reversals Include Decisions Arising Out of the Third Circuit**

**1.    *Taylor v. Barkes***

*Taylor* was a Section 1983 claim initiated by the widow of a correctional inmate who committed suicide against several correctional center officials, alleging that they violated the Eighth Amendment in failing to prevent the inmate's suicide. *Taylor*, 135 S.Ct. at 2043. The defendants filed a motion for summary judgment, invoking qualified immunity. This Court denied the motion and the Circuit Court affirmed. The Supreme Court reversed, holding that any right of an incarcerated person to proper implementation of adequate suicide prevention goals was not clearly established and the defendants were qualifiedly immune form suit. *Id.* at 2045.

**2.    *Carroll v. Carman***

In *Carroll*, the Supreme Court reversed the Third Circuit Court of Appeals' decision not to grant qualified immunity to police officers who attempted to arrest a suspect accused of stealing a car and handguns. *Carroll*, 135 S.Ct. at 352. Officers walked onto a residential property from the rear in an effort to apprehend the suspect and due to their approach, came across a sliding glass door that opened onto a ground level deck, which the officers determined was a "customary entryway." *Id.* at 349. Officer Carroll knocked on the sliding glass door and announced his presence. *Id.* A belligerent and aggressive individual emerged which led to an altercation before he was arrested. *Id.* A Section 1983 claim was filed against Officer Carroll on the basis that he had unlawfully entered the property in violation of the Fourth Amendment when he went into the backyard and onto the deck without a warrant. *Id.* at 350.

10

The primary issue upon appeal to the Supreme Court was whether Officer Carroll was entitled to qualified immunity for his conduct. The Circuit Court had relied heavily on *Estate of Smith v. Marasco*, 318 F.3d 497 (3d Cir. 2003), a decision that held that an unsuccessful knock and announce at the front door does not automatically allow officers to go onto other parts of the property. *Id.* The Court concluded that *Marasco* simply did not answer the question whether a knock and announce must begin at the front door when visitors may also go to the back door. *Id.* The Supreme Court reversed, opining that Officer Carroll's conduct did not violate a clearly established constitutional right and that he was entitled to qualified immunity. *Id.* at 352.

### C. *Salazar-Limon* Confirms Qualified Immunity Where A Police Officer Reasonably Believes that the Suspect Presents a Danger, Even When that Belief is Mistaken

The Supreme Court's decision to deny certiorari in *Salazar* is case-dispositive. Succinctly, in *Salazar*, a Houston police officer shot Mr. Salazar-Limon in the back. *Salazar-Limon*, 137 S.Ct. at 1278. Mr. Salazar-Limon claimed that the officer shot him as he tried to walk away from a confrontation with the officer on an overpass. *Id.* The officer, in contrast, claimed that Mr. Salazar-Limon turned toward him and reached for his waistband, as if for a gun, before the officer fired a shot. *Id.* It was later discovered that Mr. Salazar-Limon did not have a gun or other weapon on his person. *Id.* Similar to the case at bar, the primary question before the Court was whether the officer was entitled to qualified immunity in view of the fact that the suspect was not, in fact, armed and that the officer's reasonable belief was mistaken.

The Southern District of Texas found that the officer was entitled to qualified immunity since he reasonably believed the suspect was armed, notwithstanding that this belief was ultimately mistaken. *Salazar-Limon v. City of Houston, et al.*, 97 F.Supp.3d 898 (S.D.Tex. 2015). The Fifth Circuit affirmed. *Salazar-Limon v. City of Houston, et al.*, 826 F.3d 272

(2016).  In denying certiorari, the Court stated that it grants review in cases involving allegations

of law enforcement officers engaged in unconstitutional conduct only if the lower court

conspicuously failed to apply a governing legal rule.  *Salazar-Limon*, 137 at 1277-78.

### D.  With Respect To The March 16, 2013 Tasing Incident, The Police Officer Defendants are Entitled to Qualified Immunity Under *Salazar-Limon*

Counts I and III of the First Amended Complaint set forth claims of constitutional

violations grounded in 42 U.S.C. §1983 against the Police Officer Defendants.  The Police

Officer Defendants are entitled to qualified immunity as to these claims given their objectively

reasonable conduct in light of the circumstances presented to them.

The record is barren of any evidence to support a finding that the Police Officer

Defendants acted unreasonably or inconsistently with the contours of the Use of Force Policy

during both encounters with Mr. DiFlorio, on March 16, 2013 and March 17, 2013.  Officer

Berns testified that he believed that Mr. DiFlorio was attempting to swing at MCpl Melvin and

that he posed an immediate danger to the officers.  A-010-11 at 90:23-91:24.  MCpl Melvin

testified that he formed that belief during the encounter with Mr. DiFlorio, in which a belligerent,

aggressive large male refused to comply with commands from the officers and ultimately

attempted to swing at him.  A-032 at 35:19-36:9.  Corporal Hoffman, who witnessed the

encounter, also observed Mr. DiFlorio positioning his arm in a manner consistent with

attempting to strike MCpl Melvin.  A-038 at 19:18-20:7; 20:11-14.

Officer Berns' deployment of the Taser was objectively reasonable and consistent with

the Use of Force Policy.  The Use of Force Policy states that the officer deploying the Taser must

consider the reasonableness of its use, to include the level of force being confronted.  Officer

Berns testified that given the level of force that the officers confronted, i.e., a belligerent and

aggressive large male who appeared to attempt to take a swing at a fellow police officer, he

believed deployment of the Taser to be an appropriate means of immobilizing Mr. DiFlorio temporarily. A-031 at 62:8-19. Officer Berns has testified that he was forced into the unenviable split-second decision contemplated by the *Graham* Court, and made his best judgment call given the circumstances. *Graham*, 490 U.S. at 396-97.

Even assuming the facts in a light most favorable to Mr. DiFlorio, summary judgment is appropriate under *Salazar-Limon*. In *Salazar-Limon*, the officer's conduct, in shooting Mr. Salzar-Limon, was determined reasonable under the circumstances even considering his mistaken belief that Mr. Salzar-Limon was reaching into his waistband for a weapon and in light of Mr. Salzar-Limon's testimony to the contrary. *Salzar-Limon*, 97 F.Supp. at 901; 909. The Southern District of Texas correctly noted that: "[a]n officer's use of force is presumed to be reasonable when the officer 'has reason to believe that the suspect poses a threat of serious harm to the officer or to others.'" *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009)).

At best, Mr. DiFlorio can only contend that Officer Berns formed a mistaken belief that he was in the process of taking a swing at MCpl Melvin. The record of evidence clearly supports the conclusion that Officer Berns believed Mr. DiFlorio posed a threat of serious harm to MCpl Melvin and others. Qualified immunity protects police officers who do their best to understand the law and yet are uncertain of how it may apply to a specific situation as "an officer engaged in a traffic stop may not have access to a computer, the internet, Westlaw, or enough time to research the law." *Kelly*, 544 Fed.Appx. at 136-37.

Moreover, in *Russell v. Lowman, et al.*, SLR 15-860, slip op. (D. Del. Feb. 10, 2017), this Court was presented with circumstances similar to those in the instant matter. In *Russell*, the plaintiff filed a complaint alleging violations of his Fourth Amendment rights stemming from his detention by the police. A-099-100. The plaintiff alleged that the police officer defendants used

13

excessive force in effectuating his arrest.  A-104.  The defendants contended that no force was

used on the plaintiff at any point during the arrest.  A-104.  Notably, the Court held that "other

than plaintiff's deposition testimony, there is no evidence that any force, let alone excessive

force, was exerted against plaintiff during the stop at issue."  A-104.  The defendants filed a

motion for summary judgment, prompting the court to determine whether plaintiff's deposition

testimony, the sole evidence of excessive force, was sufficient to withstand the motion.  A-104.

In the absence of any other evidence, the Court concluded that it was insufficient.  A-105.

     In the instant matter, even the self-serving testimony of Mr. DiFlorio fails to support a

finding that the Police Officer Defendants used excessive force.  Mr. DiFlorio was quite clear

during his deposition that he had no recollection of the encounter with the police on March 16,

2013.  Whether this is attributable to a head injury sustained during the initial altercation that he

was involved in, or his consumption of alcohol, would be pure speculation.  Nevertheless, his

deposition testimony is clear and it does not provide any support for the claims of excessive

force against the Police Officer Defendants.  A-005 at 39:6-23.

     **III.**    **THE POLICE OFFICER DEFENDANTS INVOLVED IN MR.
DIFLORIO'S APPREHENSION ON MARCH 17, 2013 ARE
ENTITLED TO QUALIFIED IMMUNITY AND SUMMARY JUDGMENT
IS APPROPRIATE BECAUSE EVEN ASSUMING THE FACTS IN A
LIGHT MOST FAVORABLE TO MR. DIFLORIO, HE CANNOT
IDENTIFY ANY OFFICERS WHO STRUCK HIM**

     As explained above, the Police Officer Defendants who apprehended and ultimately

arrested Mr. DiFlorio on March 17, 2013 acted objectively reasonably given the circumstances.

It is undisputed that Mr. DiFlorio refused to turn himself in or open the door to his residence

despite several rounds of knocking and announcing by the Officer Berns and MCpl Melvin.  A-

025 at 150:3-13; A-026 at 151:3-5; A-033 at 65:7-12.  When the Police Officer Defendants

attempted to apprehend him, he pulled back and refused to exit his residence.  A-026 at 151:12-

14

17; A-034 at 66:1-4.  The momentum from the Police Officer Defendants attempting to pull Mr.

DiFlorio out of his residence caused the men to fall onto the grass.  A-026 at 151:12-17; A-034

at 66:1-4.  Mr. DiFlorio was not punched or kicked during his arrest.  A-029 at 157:3-4.

Dispositively, Mr. DiFlorio contends that he was punched and/or kicked while being

apprehended, but he cannot identify any single officer who punched or kicked him and the record

is barren of any evidence to support this contention.  In *Russell,* this Court held that this is fatal

to the plaintiff's excessive force claim.  Specifically, the Court in *Russell* concluded: "plaintiff

cannot identify specifically which officers landed which blows....defendants deny using any

kind of force on plaintiff...other than plaintiff's deposition testimony, there is no evidence that

any force, let alone excessive force, was exerted against plaintiff..."  A-104.  The sole evidence

to support Mr. DiFlorio's claim that he was subjected to excessive force on March 17, 2013 is

his nonspecific self-serving deposition testimony.  A-105.  Summary judgment is appropriate.

### IV.   THE POLICE OFFICER DEFENDANTS ARE IMMUNE FROM ALL STATE LAW CLAIMS PURSUANT TO THE COUNTY AND MUNICIPAL TORT CLAIMS ACT, 10 *DEL. C.* §4010, ET SEQ.

Count II is a cause of action alleging violations of Delaware law.  This claim fails

pursuant to the County and Municipal Tort Claims Act, 10 *Del. C.* §4010, *et seq.*  (the "Act").

The Act provides that "except as otherwise expressly provided by statute, all governmental

entities and their employees shall be immune from suit on any and all tort claims seeking

recovery of damages."  10 *Del. C.* §4011(a).  It further provides for immunity in the performance

or failure to exercise or perform a discretionary function or duty, whether or not the discretion be

abused and whether or not the statute, charter, ordinance, order, resolution, or regulation under

which the discretionary function or duty is performed is valid or invalid.  *Id.* at §4011(b)(3).  A

governmental employee may be personally liable, nonetheless, for "acts or omissions causing

15

property damage, bodily injury or death in instances in which the governmental entity is immune…but only for those acts which were not within the scope of employment or which were performed with wanton negligence or willful and malicious intent". *Id.* at §4011(c).

As set forth in Sections I and II, above, the record is barren of any support for the conclusion that the Police Officer Defendants acted with wanton negligence or willful and malicious intent. The record supports only one conclusion: that the Police Officer Defendants acted reasonably and consistent with the Use of Force Policy during both encounters with Mr. DiFlorio. Consequently, immunity is conferred upon the Police Officer Defendants and is not stripped away by the exception provided in §4011(c). *See Farris v. Moeckel*, 664 F.Supp. 881, 896 (D. Del. 1997); *Carr v. Town of Dewey Beach*, 730 F.Supp. 591, 601 (D. Del. 1997).

## V.   MR. DIFLORIO'S CLAIMS AGAINST THE CITY OF DOVER ARE MERITLESS AS HE HAS FAILED TO ADDUCE ANY EVIDENCE TO ESTABLISH THE EXISTENCE OF AN UNCONSTITUTIONAL POLICY OR CUSTOM

### A.   Legal Standard for Mr. DiFlorio's *Monell* Claim

A municipality can only be liable for an alleged constitutional transgression if there is evidence that it implemented or executed a policy, regulation or decision officially adopted by the governing body or informally adopted by custom that cause the claimed injury at issue. *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d. Cir. 1996) *citing Monell v. N.Y. City Dept. of Social Servs.*, 436 U.S. 658, 690 (1978). A plaintiff seeking to recover against a municipality for the actions of an employee must: (1) identify an allegedly unconstitutional policy or custom; (2) demonstrate that the municipality, through deliberate its and culpable conduct, was the "moving force" behind the injury alleged; and (3) demonstrate a direct causal link between the municipal action and the alleged deprivation of federal rights. *Bd. of County Comm'rs v. Brown,* 520 U.S.

16

397, 404 (1997).  The burden of establishing municipal liability rests with the plaintiff.  *Brown v. Muhlenberg Tp.*, 269 F.3d 205, 215 (3d Cir. 2001).

In *Monell*, the United States Supreme Court held that a municipality cannot be found liable for Section 1983 claims on a theory of *respondeat superior*.  *Id.* at 694.  A municipality can only be held liable when the execution of its policy or custom inflicts the injury.  *Id.*  "Proof of a single incident of unconstitutional activity is not sufficient to impose liability on the City under *Monell*..." *City of Oklahoma v. Tuttle*, 471 U.S. 808, 823–24 (1985).

### B.    Mr. DiFlorio has Failed to Identify an Unconstitutional Policy or Custom Maintained by the City of Dover

Discovery has closed and Mr. DiFlorio has failed to identify an unconstitutional policy or custom attributable to the City of Dover that caused the alleged deprivation of federal rights as set forth in Count IV of the First Amended Complaint.  [D.I. 66].  The *sole* evidentiary support for this claim is the McCauley Report, which is flawed for several reasons, as set forth below.

First, the McCauley Report contains nothing more than *ipse dixit* conclusions that attempt to contrive an unconstitutional custom or policy attributable to the City of Dover.  At its core, the McCauley Report fails to identify an unconstitutional policy or custom attributable to the City of Dover that deprived Mr. DiFlorio of his federal rights.  In fact, for the most part, the McCauley Report is silent as to imputing liability upon the City of Dover, rather, it (mistakenly) opines that the Police Officer Defendants contravened City of Dover directives.    A-076; A-080. Nevertheless, the McCauley Report ultimately concludes that the City of Dover's policies and customs fail to hold police officers accountable for their misconduct; nominalize accountability, and reflect deliberate indifference to officer and citizen well-being.  A-091.

At its best, the McCauley Report uses evidence gathered and analyzed in another case in which Mr. McCauley served as plaintiff's expert witness, *Lateef Dickerson v. Cpl. Thomas W.*

17

*Webster, et al.*, 14-1244-RGA (D. Del.), to identify a perceived shortcoming in the City of Dover's policies and procedures. As a threshold matter, the information compiled the *Dickerson* matter failed to establish an unconstitutional custom or policy. Moreover, the use of this information is irrelevant to the instant matter as discovery in the *Dickerson* matter did not involve, to any degree, the deployment of a Taser by the arresting police officers. In addition, these documents were not produced by Defendants to Mr. DiFlorio during discovery in this matter, nor did Mr. DiFlorio produce these documents to the City of Dover.

The shortcoming that the McCauley Report identifies is the fact that there is a zero percent (0%) use of force case sustain rate within the City of Dover. Stated differently, pursuant to City of Dover's Internal Affairs Annual Reports, between the years of 2008 and 2014, 0% of the use of force cases were sustained, meaning that insufficient evidence existed to prove the allegation of misconduct by the involved officer. A-086-88. Using this statistic as its driving force for its unfounded conclusions, the McCauley Report attempts to make viable an otherwise non-existent claim against the City of Dover. A-091.

Simply put, the fact that the City of Dover boasts a zero percent (0%) use of force sustain rate is a testament to the City of Dover's level of training and operational discipline, not the foundation for a claim that the City of Dover maintains an unconstitutional policy or custom. The McCauley Report, in a contrived manner, seeks to use this exemplary record as ammunition to support the unfounded conclusion that there is no accountability within the City of Dover. Absent this "made for litigation" conclusion, the McCauley Report fails to identify an actual unconstitutional policy or custom maintained by the City of Dover.

Specifically as to Mr. DiFlorio's allegation that the City of Dover failed to adequately train the Police Officer Defendants, the law in this Circuit is that the "scope of failure to train

18

liability is a narrow one." *Muhlenberg Tp.*, 269 F.3d at 215. This is particularly true where, as here, Mr. DiFlorio merely alleges that a different training program would have been more effective. *Id.* at 216 ("[t]o survive summary judgment on a failure to train theory, the [Plaintiff] must present evidence that the need for more or different training was so obvious and so likely to lead to the violation of constitutional rights that the policymaker's failure to respond amounts to deliberate indifference."). Mr. DiFlorio has not adduced evidence sufficient to support a jury finding that the City of Dover's police training is so obviously inadequate that it amounts to deliberate indifference to the rights of its citizens. *Brown*, 269 F.3d at 216.

C.  **Mr. DiFlorio has Failed to Establish that the City of Dover acted Deliberately and was the "Moving Force" Behind Plaintiff's Alleged Injuries or that a Direct Causal Link Exists Between Plaintiff's Alleged Injuries and the City of Dover's Policies or Customs to Any Degree**

Mr. DiFlorio has failed to identify an unconstitutional policy or custom maintained by the City of Dover. Mr. DiFlorio has also wholly failed to establish that the City of Dover acted deliberately in that it was the "moving force" behind Mr. DiFlorio's alleged injuries. A plaintiff cannot prove deliberate indifference or the existence of a municipal policy or custom authorizing constitutional violations where the isolated misconduct of a single subordinate officer conflicts with its official, written policy. *Grazier ex rel. White v. City of Philadelphia*, 328 F.3d 120, 124 (3d Cir. 2003); *see also Brown v. Muhlenberg Twp.*, 269 F.3d 205, 208–09 (3d Cir. 2001); *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 22–23, 25 (3d Cir. 1997).

The sole piece of evidence to support Mr. DiFlorio's claim that the City of Dover acted deliberately and was the moving force behind his injuries again comes from the testimony contained in the McCauley Report. *See* McCauley Report at 10-14. The McCauley Report, however, concludes that Police Officers in question, namely, Officer Berns and MCPL Melvin,

19

acted or failed to act contrary to the City of Dover's directives.  A-077-81.  Thus, not only does the McCauley Report fail to support Plaintiff's claim, it actually refutes it.

"A City's failure to train its police officers must reflect a deliberate or conscious choice by policymaking officials, such that one could call it the City's policy or custom." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989).  In *Muhlenberg Tp.*, the plaintiffs, dog owners, brought a Section 1983 action against a police officer who shot their pet dog, as well as the Township by which the police officer was employed.  The plaintiffs argued that the fact that the township's police officers received no formal training specifically to handling dogs constituted a deliberate choice by the township that was the moving force behind the injury.  The Third Circuit concluded that the mere fact that the officers received no formal training was not sufficient to rise to the level of deliberate indifference.  *Muhlenberg Tp.*, 269 F.3d at 215-16.

Similar to the circumstances in *Muhlenberg Tp.*, nothing in the record supports a finding that the City of Dover made a deliberate or conscious decision to disregard the fact that the training received by its officers with respect to Taser practice was not sufficient or that it was the "moving force" behind the alleged injuries.  *Id.*  At best, Mr. DiFlorio claims that the City of Dover failed to adequately train its police officers as to Taser deployment and practice as it is undisputed that the City of Dover's police officers received Taser training.  A-077-81.

Given the fact that Mr. DiFlorio has failed to identify an unconstitutional policy or custom to support his *Monell* claim, it goes without saying that nothing in the record supports the necessary element of causation against the City of Dover.

## CONCLUSION

For the reasons set forth herein, Defendants respectfully request that the Court grant their Motion for Summary Judgment and dismiss the claims against them.

Respectfully submitted,

**WHITEFORD TAYLOR & PRESTON LLP**

*/s/ Daniel A. Griffith*
Daniel A. Griffith, Esquire (# 4209)
Kaan Ekiner, Esquire (# 5607)
The Renaissance Centre
405 N. King Street, Suite 500
Wilmington, DE 19801
Telephone:  (302) 357-3262
Facsimile:  (302) 357-3275
dgriffith@wtplaw.com
*Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| STEPHEN DIFLORIO, | : | |
| | : | |
| Plaintiff, | : | |
| | : | C.A. No. 1:15-cv-00186-GMS |
| v. | : | |
| | : | |
| CITY OF DOVER, et al. | : | |
| | : | |
| Defendants. | : | |

### CERTIFICATE OF SERVICE

I, Daniel A. Griffith, Esquire, certify that on this 14th day of July, 2017, a true and correct copy of the foregoing Defendants' Opening Brief in Support of Motion for Summary Judgment was served upon all counsel of record electronically via CM/ECF.

**WHITEFORD TAYLOR & PRESTON LLC**

*/s/ Daniel A. Griffith*
Daniel A. Griffith, Esq. (ID #4209)
Kaan Ekiner, Esq. (ID #5607)
The Renaissance Centre
405 N. King Street, Suite 500
Wilmington, DE 19801
Telephone: (302) 357-3254
Facsimile: (302) 357-3274
dgriffith@wtplaw.com
kekiner@wtplaw.com
*Attorneys for Defendants*